**No. 25-50661**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

NATIONAL INFUSION CENTER ASSOCIATION, *on behalf of itself and its members*; GLOBAL COLON CANCER ASSOCIATION, *on behalf of itself and its members*; PHARMACEUTICAL RESEARCH AND MANUFACTURERS OF AMERICA, *on behalf of itself and its members*,

*Plaintiffs-Appellants*,

v.

ROBERT F. KENNEDY, JR., *Secretary, U.S. Department of Health and Human Services, in his official capacity*; UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES; MEHMET OZ, *Administrator of the Centers for Medicare and Medicaid Services, in his official capacity*; CENTERS FOR MEDICARE AND MEDICAID SERVICES,

*Defendants-Appellees*.

On Appeal from the United States District Court
for the Western District of Texas

## STATUTORY ADDENDUM

*Of Counsel:*

ROBERT FOX FOSTER
*Acting General Counsel*

ELIZABETH C. KELLEY
*Acting Deputy General Counsel*

JOCELYN S. BEER
*Acting Deputy Associate General Counsel for Litigation*

KENNETH R. WHITLEY
ANANT KUMAR
*Attorneys*
*U.S. Department of Health and Human Services*

ERIC J. HAMILTON
*Deputy Assistant Attorney General*

JUSTIN R. SIMMONS
*United States Attorney*

MICHAEL S. RAAB
MAXWELL A. BALDI
*Attorneys, Appellate Staff*
*Civil Division, Room 7513*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 532-0211*

# TABLE OF CONTENTS

42 U.S.C. § 1320f.................................................................................A1

42 U.S.C. § 1320f-1..............................................................................A5

42 U.S.C. § 1320f-2............................................................................ A21

42 U.S.C. § 1320f-3............................................................................ A24

42 U.S.C. § 1320f-4............................................................................ A33

42 U.S.C. § 1320f-5............................................................................ A34

42 U.S.C. § 1320f-6............................................................................ A36

42 U.S.C. § 1320f-7............................................................................ A38

26 U.S.C. § 5000D............................................................................. A39

**42 U.S.C. § 1320f**

**§ 1320f. Establishment of program**

**(a) In general**

The Secretary shall establish a Drug Price Negotiation Program (in this part referred to as the "program"). Under the program, with respect to each price applicability period, the Secretary shall—

(1) publish a list of selected drugs in accordance with section 1320f–1 of this title;

(2) enter into agreements with manufacturers of selected drugs with respect to such period, in accordance with section 1320f–2 of this title;

(3) negotiate and, if applicable, renegotiate maximum fair prices for such selected drugs, in accordance with section 1320f–3 of this title;[*]

(4) carry out the publication and administrative duties and compliance monitoring in accordance with sections 1320f–4 and 1320f–5 of this title.

**(b) Definitions relating to timing**

For purposes of this part:

**(1) Initial price applicability year**

The term "initial price applicability year" means a year (beginning with 2026).

**(2) Price applicability period**

The term "price applicability period" means, with respect to a qualifying single source drug, the period beginning with the first initial price applicability year with respect to which such drug is a selected drug and ending with the last year during which the drug is a selected drug.

**(3) Selected drug publication date**

The term "selected drug publication date" means, with respect to each initial price applicability year, February 1 of the year that begins 2 years prior to such year.[†]

---

[*] So in original. Probably should be followed by "and".

[†] So in original. Probably should read as follows: "during the most recent 12-month period for which data are available prior to such selected drug publication date (but ending no later than October 31 of the year prior to the year of such drug publication date)".

**(4) Negotiation period**

The term "negotiation period" means, with respect to an initial price applicability year with respect to a selected drug, the period—

(A) beginning on the sooner of—

(i) the date on which the manufacturer of the drug and the Secretary enter into an agreement under section 1320f–2 of this title with respect to such drug; or

(ii) February 28 following the selected drug publication date with respect to such selected drug; and

(B) ending on November 1 of the year that begins 2 years prior to the initial price applicability year.

## (c) Other definitions

For purposes of this part:

### (1) Manufacturer

The term "manufacturer" has the meaning given that term in section 1395w–3a(c)(6)(A) of this title.

### (2) Maximum fair price eligible individual

The term "maximum fair price eligible individual" means, with respect to a selected drug—

(A) in the case such drug is dispensed to the individual at a pharmacy, by a mail order service, or by another dispenser, an individual who is enrolled in a prescription drug plan under part D of subchapter XVIII or an MA–PD plan under part C of such subchapter if coverage is provided under such plan for such selected drug; and

(B) in the case such drug is furnished or administered to the individual by a hospital, physician, or other provider of services or supplier, an individual who is enrolled under part B of subchapter XVIII, including an individual who is enrolled in an MA plan under part C of such subchapter, if payment may be made under part B for such selected drug.

### (3) Maximum fair price

The term "maximum fair price" means, with respect to a year during a price applicability period and with respect to a selected drug (as defined in section 1320f–1(c) of this title) with respect to such period, the price negotiated pursuant

to section 1320f–3 of this title, and updated pursuant to section 1320f–4(b) of this title, as applicable, for such drug and year.

**(4) Reference product**

The term "reference product" has the meaning given such term in section 262(i) of this title.

**(5) Total expenditures**

The term "total expenditures" includes, in the case of expenditures with respect to part D of subchapter XVIII, the total gross covered prescription drug costs (as defined in section 1395w–115(b)(3) of this title). The term "total expenditures" excludes, in the case of expenditures with respect to part B of such subchapter, expenditures for a drug or biological product that are bundled or packaged into the payment for another service.

**(6) Unit**

The term "unit" means, with respect to a drug or biological product, the lowest identifiable amount (such as a capsule or tablet, milligram of molecules, or grams) of the drug or biological product that is dispensed or furnished.

**(d) Timing for initial price applicability year 2026**

Notwithstanding the provisions of this part, in the case of initial price applicability year 2026, the following rules shall apply for purposes of implementing the program:

(1) Subsection (b)(3) shall be applied by substituting "September 1, 2023" for ", with respect to each initial price applicability year, February 1 of the year that begins 2 years prior to such year".

(2) Subsection (b)(4) shall be applied—

(A) in subparagraph (A)(ii), by substituting "October 1, 2023" for "February 28 following the selected drug publication date with respect to such selected drug"; and

(B) in subparagraph (B), by substituting "August 1, 2024" for "November 1 of the year that begins 2 years prior to the initial price applicability year".

(3) Section 1320f–1 of this title shall be applied—

(A) in subsection (b)(1)(A), by substituting "during the period beginning on June 1, 2022, and ending on May 31, 2023" for "during the most recent period of 12 months prior to the selected drug publication date (but ending not later than October 31 of the year prior to the year of such drug publication date), with respect to such year, for which data are available"; and

(B) in subsection (d)(1)(A), by substituting "during the period beginning on June 1, 2022, and ending on May 31, 2023" for "during the most recent period for which data are available of at least 12 months prior to the selected drug publication date (but ending no later than October 31 of the year prior to the year of such drug publication date), with respect to such year".[2]

(4) Section 1320f–2(a) of this title shall be applied by substituting "October 1, 2023" for "February 28 following the selected drug publication date with respect to such selected drug".

(5) Section 1320f–3(b)(2) of this title shall be applied—

(A) in subparagraph (A), by substituting "October 2, 2023" for "March 1 of the year of the selected drug publication date, with respect to the selected drug";

(B) in subparagraph (B), by substituting "February 1, 2024" for "the June 1 following the selected drug publication date"; and

(C) in subparagraph (E), by substituting "August 1, 2024" for "the first day of November following the selected drug publication date, with respect to the initial price applicability year".

(6) Section 1320f–4(a)(1) of this title shall be applied by substituting "September 1, 2024" for "November 30 of the year that is 2 years prior to such initial price applicability year".

**42 U.S.C. § 1320f-1**

**§ 1320f-1. Selection of negotiation-eligible drugs as selected drugs**

**(a) In general**

Not later than the selected drug publication date with respect to an initial price applicability year, in accordance with subsection (b), the Secretary shall select and publish a list of—

> (1) with respect to the initial price applicability year 2026, 10 negotiation-eligible drugs described in subparagraph (A) of subsection (d)(1), but not subparagraph (B) of such subsection, with respect to such year (or, all (if such number is less than 10) such negotiation-eligible drugs with respect to such year);

> (2) with respect to the initial price applicability year 2027, 15 negotiation-eligible drugs described in subparagraph (A) of subsection (d)(1), but not subparagraph (B) of such subsection, with respect to such year (or, all (if such number is less than 15) such negotiation-eligible drugs with respect to such year);

> (3) with respect to the initial price applicability year 2028, 15 negotiation-eligible drugs described in subparagraph (A) or (B) of subsection (d)(1) with respect to such year (or, all (if such number is less than 15) such negotiation-eligible drugs with respect to such year); and

> (4) with respect to the initial price applicability year 2029 or a subsequent year, 20 negotiation-eligible drugs described in subparagraph (A) or (B) of subsection (d)(1), with respect to such year (or, all (if such number is less than 20) such negotiation-eligible drugs with respect to such year).

Subject to subsection (c)(2) and section 1320f–3(f)(5) of this title, each drug published on the list pursuant to the previous sentence and subsection (b)(3) shall be subject to the negotiation process under section 1320f–3 of this title for the negotiation period with respect to such initial price applicability year (and the renegotiation process under such section as applicable for any subsequent year during the applicable price applicability period).

**(b) Selection of drugs**

**(1) In general**

In carrying out subsection (a), subject to paragraph (2), the Secretary shall, with respect to an initial price applicability year, do the following:

> (A) Rank negotiation-eligible drugs described in subsection (d)(1) according to the total expenditures for such drugs under parts B and D of subchapter XVIII, as determined by the Secretary, during the most recent period of 12

months prior to the selected drug publication date (but ending not later than October 31 of the year prior to the year of such drug publication date), with respect to such year, for which data are available, with the negotiation-eligible drugs with the highest total expenditures being ranked the highest.

(B) Select from such ranked drugs with respect to such year the negotiation-eligible drugs with the highest such rankings.

(C) In the case of a biological product for which the inclusion of the biological product as a selected drug on a list published under subsection (a) has been delayed under subsection (f)(2), remove such biological product from the rankings under subparagraph (A) before making the selections under subparagraph (B).

### (2) High spend part D drugs for 2026 and 2027

With respect to the initial price applicability year 2026 and with respect to the initial price applicability year 2027, the Secretary shall apply paragraph (1) as if the reference to "negotiation-eligible drugs described in subsection (d)(1)" were a reference to "negotiation-eligible drugs described in subsection (d)(1)(A)" and as if the reference to "total expenditures for such drugs under parts B and D of subchapter XVIII" were a reference to "total expenditures for such drugs under part D of subchapter XVIII".

### (3) Inclusion of delayed biological products

Pursuant to subparagraphs (B)(ii)(I) and (C)(i) of subsection (f)(2), the Secretary shall select and include on the list published under subsection (a) the biological products described in such subparagraphs. Such biological products shall count towards the required number of drugs to be selected under subsection (a)(1).

## (c) Selected drug

### (1) In general

For purposes of this part, in accordance with subsection (e)(2) and subject to paragraph (2), each negotiation-eligible drug included on the list published under subsection (a) with respect to an initial price applicability year shall be referred to as a "selected drug" with respect to such year and each subsequent year beginning before the first year that begins at least 9 months after the date on which the Secretary determines at least one drug or biological product—

(A) is approved or licensed (as applicable)—

(i) under section 355(j) of title 21 using such drug as the listed drug; or

(ii) under section 262(k) of this title using such drug as the reference product; and

(B) is marketed pursuant to such approval or licensure.

**(2) Clarification**

A negotiation-eligible drug—

(A) that is included on the list published under subsection (a) with respect to an initial price applicability year; and

(B) for which the Secretary makes a determination described in paragraph (1) before or during the negotiation period with respect to such initial price applicability year;

shall not be subject to the negotiation process under section 1320f–3 of this title with respect to such negotiation period and shall continue to be considered a selected drug under this part with respect to the number of negotiation-eligible drugs published on the list under subsection (a) with respect to such initial price applicability year.

**(d) Negotiation-eligible drug**

**(1) In general**

For purposes of this part, subject to paragraph (2), the term "negotiation-eligible drug" means, with respect to the selected drug publication date with respect to an initial price applicability year, a qualifying single source drug, as defined in subsection (e), that is described in either of the following subparagraphs (or, with respect to the initial price applicability year 2026 or 2027, that is described in subparagraph (A)):

**(A) Part D high spend drugs**

The qualifying single source drug is, determined in accordance with subsection (e)(2), among the 50 qualifying single source drugs with the highest total expenditures under part D of subchapter XVIII, as determined by the Secretary in accordance with paragraph (3), during the most recent 12-month period for which data are available prior to such selected drug publication date (but ending no later than October 31 of the year prior to the year of such drug publication date).

**(B) Part B high spend drugs**

The qualifying single source drug is, determined in accordance with subsection (e)(2), among the 50 qualifying single source drugs with the highest total expenditures under part B of subchapter XVIII, as determined by the

Secretary in accordance with paragraph (3), during such most recent 12-month period, as described in subparagraph (A).

**(2) Exception for small biotech drugs**

**(A) In general**

Subject to subparagraph (C), the term "negotiation-eligible drug" shall not include, with respect to the initial price applicability years 2026, 2027, and 2028, a qualifying single source drug that meets either of the following:

**(i) Part D drugs**

The total expenditures for the qualifying single source drug under part D of subchapter XVIII, as determined by the Secretary in accordance with paragraph (3)(B), during 2021—

(I) are equal to or less than 1 percent of the total expenditures under such part D, as so determined, for all covered part D drugs (as defined in section 1395w–102(e) of this title) during such year; and

(II) are equal to at least 80 percent of the total expenditures under such part D, as so determined, for all covered part D drugs for which the manufacturer of the drug has an agreement in effect under section 1395w–114a of this title during such year.

**(ii) Part B drugs**

The total expenditures for the qualifying single source drug under part B of subchapter XVIII, as determined by the Secretary in accordance with paragraph (3)(B), during 2021—

(I) are equal to or less than 1 percent of the total expenditures under such part B, as so determined, for all qualifying single source drugs for which payment may be made under such part B during such year; and

(II) are equal to at least 80 percent of the total expenditures under such part B, as so determined, for all qualifying single source drugs of the manufacturer for which payment may be made under such part B during such year.

**(B) Clarifications relating to manufacturers**

**(i) Aggregation rule**

All persons treated as a single employer under subsection (a) or (b) of section 52 of the Internal Revenue Code of 1986 shall be treated as one manufacturer for purposes of this paragraph.

**(ii) Limitation**

A drug shall not be considered to be a qualifying single source drug described in clause (i) or (ii) of subparagraph (A) if the manufacturer of such drug is acquired after 2021 by another manufacturer that does not meet the definition of a specified manufacturer under section 1395w–114c(g)(4)(B)(ii) of this title, effective at the beginning of the plan year immediately following such acquisition or, in the case of an acquisition before 2025, effective January 1, 2025.

**(C) Drugs not included as small biotech drugs**

A new formulation, such as an extended release formulation, of a qualifying single source drug shall not be considered a qualifying single source drug described in subparagraph (A).

**(3) Clarifications and determinations**

**(A) Previously selected drugs and small biotech drugs excluded**

In applying subparagraphs (A) and (B) of paragraph (1), the Secretary shall not consider or count—

(i) drugs that are already selected drugs; and

(ii) for initial price applicability years 2026, 2027, and 2028, qualifying single source drugs described in paragraph (2)(A).

**(B) Use of data**

In determining whether a qualifying single source drug satisfies any of the criteria described in paragraph (1) or (2), the Secretary shall use data that is aggregated across dosage forms and strengths of the drug, including new formulations of the drug, such as an extended release formulation, and not based on the specific formulation or package size or package type of the drug.

**(e) Qualifying single source drug**

**(1) In general**

For purposes of this part, the term "qualifying single source drug" means, with respect to an initial price applicability year, subject to paragraphs (2) and (3), a covered part D drug (as defined in section 1395w–102(e) of this title) that is described in any of the following or a drug or biological product for which payment may be made under part B of subchapter XVIII that is described in any of the following:

**(A) Drug products**

A drug—

(i) that is approved under section 355(c) of title 21 and is marketed pursuant to such approval;

(ii) for which, as of the selected drug publication date with respect to such initial price applicability year, at least 7 years will have elapsed since the date of such approval; and

(iii) that is not the listed drug for any drug that is approved and marketed under section 355(j) of such title.

**(B) Biological products**

A biological product—

(i) that is licensed under section 262(a) of this title and is marketed under section 262 of this title;

(ii) for which, as of the selected drug publication date with respect to such initial price applicability year, at least 11 years will have elapsed since the date of such licensure; and

(iii) that is not the reference product for any biological product that is licensed and marketed under section 262(k) of this title.

**(2) Treatment of authorized generic drugs**

**(A) In general**

In the case of a qualifying single source drug described in subparagraph (A) or (B) of paragraph (1) that is the listed drug (as such term is used in section 355(j) of title 21) or a product described in clause (ii) of subparagraph (B), with respect to an authorized generic drug, in applying the provisions of this part, such authorized generic drug and such listed drug or such product shall be treated as the same qualifying single source drug.

**(B) Authorized generic drug defined**

For purposes of this paragraph, the term "authorized generic drug" means—

(i) in the case of a drug, an authorized generic drug (as such term is defined in section 355(t)(3) of title 21); and

(ii) in the case of a biological product, a product that—

(I) has been licensed under section 262(a) of this title; and

      (II) is marketed, sold, or distributed directly or indirectly to retail class of trade under a different labeling, packaging (other than repackaging as the reference product in blister packs, unit doses, or similar packaging for use in institutions), product code, labeler code, trade name, or trade mark than the reference product.

**(3) Exclusions**

In this part, the term "qualifying single source drug" does not include any of the following:

### (A) Certain orphan drugs

A drug that is designated as a drug for only one rare disease or condition under section 360bb of title 21 and for which the only approved indication (or indications) is for such disease or condition.

### (B) Low spend medicare drugs

A drug or biological product with respect to which the total expenditures under parts B and D of subchapter XVIII, as determined by the Secretary in accordance with subsection (d)(3)(B)—

    (i) with respect to initial price applicability year 2026, is less than, during the period beginning on June 1, 2022, and ending on May 31, 2023, $200,000,000;

    (ii) with respect to initial price applicability year 2027, is less than, during the most recent 12-month period applicable under subparagraphs (A) and (B) of subsection (d)(1) for such year, the dollar amount specified in clause (i) increased by the annual percentage increase in the consumer price index for all urban consumers (all items; United States city average) for the period beginning on June 1, 2023, and ending on September 30, 2024; or

    (iii) with respect to a subsequent initial price applicability year, is less than, during the most recent 12-month period applicable under subparagraphs (A) and (B) of subsection (d)(1) for such year, the dollar amount specified in this subparagraph for the previous initial price applicability year increased by the annual percentage increase in such consumer price index for the 12-month period ending on September 30 of the year prior to the year of the selected drug publication date with respect to such subsequent initial price applicability year.

### (C) Plasma-derived products

A biological product that is derived from human whole blood or plasma.

**(f) Special rule to delay selection and negotiation of biologics for biosimilar market entry**

**(1) Application**

**(A) In general**

Subject to subparagraph (B), in the case of a biological product that would (but for this subsection) be an extended-monopoly drug (as defined in section 1320f–3(c)(4) of this title) included as a selected drug on the list published under subsection (a) with respect to an initial price applicability year, the rules described in paragraph (2) shall apply if the Secretary determines that there is a high likelihood (as described in paragraph (3)) that a biosimilar biological product (for which such biological product will be the reference product) will be licensed and marketed under section 262(k) of this title before the date that is 2 years after the selected drug publication date with respect to such initial price applicability year.

**(B) Request required**

**(i) In general**

The Secretary shall not provide for a delay under—

(I) paragraph (2)(A) unless a request is made for such a delay by a manufacturer of a biosimilar biological product prior to the selected drug publication date for the list published under subsection (a) with respect to the initial price applicability year for which the biological product may have been included as a selected drug on such list but for subparagraph (2)(A); or

(II) paragraph (2)(B)(iii) unless a request is made for such a delay by such a manufacturer prior to the selected drug publication date for the list published under subsection (a) with respect to the initial price applicability year that is 1 year after the initial price applicability year for which the biological product described in subsection (a) would have been included as a selected drug on such list but for paragraph (2)(A).

**(ii) Information and documents**

**(I) In general**

A request made under clause (i) shall be submitted to the Secretary by such manufacturer at a time and in a form and manner specified by the Secretary, and contain—

(aa) information and documents necessary for the Secretary to make determinations under this subsection, as specified by the Secretary and including, to the extent available, items described in subclause (III); and

(bb) all agreements related to the biosimilar biological product filed with the Federal Trade Commission or the Assistant Attorney General pursuant to subsections (a) and (c) of section 1112 of the Medicare Prescription Drug, Improvement, and Modernization Act of 2003.

### (II) Additional information and documents

After the Secretary has reviewed the request and materials submitted under subclause (I), the manufacturer shall submit any additional information and documents requested by the Secretary necessary to make determinations under this subsection.

### (III) Items described

The items described in this clause are the following:

(aa) The manufacturing schedule for such biosimilar biological product submitted to the Food and Drug Administration during its review of the application under such section 262(k) of this title.

(bb) Disclosures (in filings by the manufacturer of such biosimilar biological product with the Securities and Exchange Commission required under section 78l(b), 78l(g), 78m(a), or 78o(d) of title 15 about capital investment, revenue expectations, and actions taken by the manufacturer that are typical of the normal course of business in the year (or the 2 years, as applicable) before marketing of a biosimilar biological product) that pertain to the marketing of such biosimilar biological product, or comparable documentation that is distributed to the shareholders of privately held companies.

## (C) Aggregation rule

### (i) In general

All persons treated as a single employer under subsection (a) or (b) of section 52 of the Internal Revenue Code of 1986, or in a partnership, shall be treated as one manufacturer for purposes of paragraph (2)(D)(iv).

### (ii) Partnership defined

In clause (i), the term "partnership" means a syndicate, group, pool, joint venture, or other organization through or by means of which any business, financial operation, or venture is carried on by the manufacturer of the biological product and the manufacturer of the biosimilar biological product.

## (2) Rules described

The rules described in this paragraph are the following:

### (A) Delayed selection and negotiation for 1 year

If a determination of high likelihood is made under paragraph (3), the Secretary shall delay the inclusion of the biological product as a selected drug on the list published under subsection (a) until such list is published with respect to the initial price applicability year that is 1 year after the initial price applicability year for which the biological product would have been included as a selected drug on such list.

### (B) If not licensed and marketed during the initial delay

### (i) In general

If, during the time period between the selected drug publication date on which the biological product would have been included on the list as a selected drug pursuant to subsection (a) but for subparagraph (A) and the selected drug publication date with respect to the initial price applicability year that is 1 year after the initial price applicability year for which such biological product would have been included as a selected drug on such list, the Secretary determines that the biosimilar biological product for which the manufacturer submitted the request under paragraph (1)(B)(i)(II) (and for which the Secretary previously made a high likelihood determination under paragraph (3)) has not been licensed and marketed under section 262(k) of this title, the Secretary shall, at the request of such manufacturer—

(I) reevaluate whether there is a high likelihood (as described in paragraph (3)) that such biosimilar biological product will be licensed and marketed under such section 262(k) before the date that is 2 years after the selected drug publication date for which such biological product would have been included as a selected drug on such list published but for subparagraph (A); and

(II) evaluate whether, on the basis of clear and convincing evidence, the manufacturer of such biosimilar biological product has made a significant amount of progress (as determined by the Secretary) towards both such licensure and the marketing of such biosimilar biological product (based on information from items described in subclauses (I)(bb) and (II) of paragraph (1)(B)(ii)) since the receipt by the Secretary of the request made by such manufacturer under paragraph (1)(B)(i)(I).

### (ii) Selection and negotiation

If the Secretary determines that there is not a high likelihood that such biosimilar biological product will be licensed and marketed as described in clause (i)(I) or there has not been a significant amount of progress as described in clause (i)(II)—

(I) the Secretary shall include the biological product as a selected drug on the list published under subsection (a) with respect to the initial price applicability year that is 1 year after the initial price applicability year for which such biological product would have been included as a selected drug on such list but for subparagraph (A); and

(II) the manufacturer of such biological product shall pay a rebate under paragraph (4) with respect to the year for which such manufacturer would have provided access to a maximum fair price for such biological product but for subparagraph (A).

### (iii) Second 1-year delay

If the Secretary determines that there is a high likelihood that such biosimilar biological product will be licensed and marketed (as described in clause (i)(I)) and a significant amount of progress has been made by the manufacturer of such biosimilar biological product towards such licensure and marketing (as described in clause (i)(II)), the Secretary shall delay the inclusion of the biological product as a selected drug on the list published under subsection (a) until the selected drug publication date of such list with respect to the initial price applicability year that is 2 years after the initial price applicability year for which such biological product would have been included as a selected drug on such list but for this subsection.

### (C) If not licensed and marketed during the year two delay

If, during the time period between the selected drug publication date of the list for which the biological product would have been included as a selected drug but for subparagraph (B)(iii) and the selected drug publication date with

respect to the initial price applicability year that is 2 years after the initial price applicability year for which such biological product would have been included as a selected drug on such list but for this subsection, the Secretary determines that such biosimilar biological product has not been licensed and marketed—

(i) the Secretary shall include such biological product as a selected drug on such list with respect to the initial price applicability year that is 2 years after the initial price applicability year for which such biological product would have been included as a selected drug on such list; and

(ii) the manufacturer of such biological product shall pay a rebate under paragraph (4) with respect to the years for which such manufacturer would have provided access to a maximum fair price for such biological product but for this subsection.

**(D) Limitations on delays**

**(i) Limited to 2 years**

In no case shall the Secretary delay the inclusion of a biological product on the list published under subsection (a) for more than 2 years.

**(ii) Exclusion of biological products that transitioned to a long-monopoly drug during the delay**

In the case of a biological product for which the inclusion on the list published pursuant to subsection (a) was delayed by 1 year under subparagraph (A) and for which there would have been a change in status to a long-monopoly drug (as defined in section 1320f–3(c)(5) of this title) if such biological product had been a selected drug, in no case may the Secretary provide for a second 1-year delay under subparagraph (B)(iii).

**(iii) Exclusion of biological products if more than 1 year since licensure**

In no case shall the Secretary delay the inclusion of a biological product on the list published under subsection (a) if more than 1 year has elapsed since the biosimilar biological product has been licensed under section 262(k) of this title and marketing has not commenced for such biosimilar biological product.

**(iv) Certain manufacturers of biosimilar biological products excluded**

In no case shall the Secretary delay the inclusion of a biological product as a selected drug on the list published under subsection (a) if Secretary

determined that the manufacturer of the biosimilar biological product described in paragraph (1)(A)—

(I) is the same as the manufacturer of the reference product described in such paragraph or is treated as being the same pursuant to paragraph (1)(C); or

(II) has, based on information from items described in paragraph (1)(B)(ii)(I)(bb), entered into any agreement described in such paragraph with the manufacturer of the reference product described in paragraph (1)(A) that—

(aa) requires or incentivizes the manufacturer of the biosimilar biological product to submit a request described in paragraph (1)(B); or

(bb) restricts the quantity (either directly or indirectly) of the biosimilar biological product that may be sold in the United States over a specified period of time.

**(3) High likelihood**

For purposes of this subsection, there is a high likelihood described in paragraph (1) or paragraph (2), as applicable, if the Secretary finds that—

(A) an application for licensure under section 262(k) of this title for the biosimilar biological product has been accepted for review or approved by the Food and Drug Administration; and

(B) information from items described in sub clauses* (I)(bb) and (III) of paragraph (1)(B)(ii) submitted to the Secretary by the manufacturer requesting a delay under such paragraph provides clear and convincing evidence that such biosimilar biological product will, within the time period specified under paragraph (1)(A) or (2)(B)(i)(I), be marketed.

**(4) Rebate**

**(A) In general**

For purposes of subparagraphs (B)(ii)(II) and (C)(ii) of paragraph (2), in the case of a biological product for which the inclusion on the list under subsection (a) was delayed under this subsection and for which the Secretary has negotiated and entered into an agreement under section 1320f–2 of this title with respect to such biological product, the manufacturer shall be

---

* So in original.

required to pay a rebate to the Secretary at such time and in such manner as determined by the Secretary.

**(B) Amount**

Subject to subparagraph (C), the amount of the rebate under subparagraph (A) with respect to a biological product shall be equal to the estimated amount—

(i) in the case of a biological product that is a covered part D drug (as defined in section 1395w–102(e) of this title), that is the sum of the products of—

(I) 75 percent of the amount by which—

(aa) the average manufacturer price, as reported by the manufacturer of such covered part D drug under section 1396r–8 of this title (or, if not reported by such manufacturer under section 1396r–8 of this title, as reported by such manufacturer to the Secretary pursuant to the agreement under section 1320f–2(a) of this title) for such biological product, with respect to each of the calendar quarters of the price applicability period that would have applied but for this subsection; exceeds

(bb) in the initial price applicability year that would have applied but for a delay under—

(AA) paragraph (2)(A), the maximum fair price negotiated under section 1320f–3 of this title for such biological product under such agreement; or

(BB) paragraph (2)(B)(iii), such maximum fair price, increased as described in section 1320f–4(b)(1)(A) of this title; and

(II) the number of units dispensed under part D of subchapter XVIII for such covered part D drug during each such calendar quarter of such price applicability period; and

(ii) in the case of a biological product for which payment may be made under part B of subchapter XVIII, that is the sum of the products of—

(I) 80 percent of the amount by which—

(aa) the payment amount for such biological product under section 1395w–3a(b) of this title, with respect to each of the

calendar quarters of the price applicability period that would have applied but for this subsection; exceeds

(bb) in the initial price applicability year that would have applied but for a delay under—

(AA) paragraph (2)(A), the maximum fair price negotiated under section 1320f–3 of this title for such biological product under such agreement; or

(BB) paragraph (2)(B)(iii), such maximum fair price, increased as described in section 1320f–4(b)(1)(A) of this title; and

(II) the number of units (excluding units that are packaged into the payment amount for an item or service and are not separately payable under such part B) of the billing and payment code of such biological product administered or furnished under such part B during each such calendar quarter of such price applicability period.

**(C) Special rule for delayed biological products that are long-monopoly drugs**

**(i) In general**

In the case of a biological product with respect to which a rebate is required to be paid under this paragraph, if such biological product qualifies as a long-monopoly drug (as defined in section 1320f–3(c)(5) of this title) at the time of its inclusion on the list published under subsection (a), in determining the amount of the rebate for such biological product under subparagraph (B), the amount described in clause (ii) shall be substituted for the maximum fair price described in clause (i)(I) or (ii)(I) of such subparagraph (B), as applicable.

**(ii) Amount described**

The amount described in this clause is an amount equal to 65 percent of the average non-Federal average manufacturer price for the biological product for 2021 (or, in the case that there is not an average non-Federal average manufacturer price available for such biological product for 2021, for the first full year following the market entry for such biological product), increased by the percentage increase in the consumer price index for all urban consumers (all items; United States city average) from September 2021 (or December of such first full year following the market entry), as applicable, to September of the year prior to the selected drug publication date with respect to the initial price applicability year that would have applied but for this subsection.

**(D) Rebate deposits**

Amounts paid as rebates under this paragraph shall be deposited into—

(i) in the case payment is made for such biological product under part B of subchapter XVIII, the Federal Supplementary Medical Insurance Trust Fund established under section 1395t of this title; and

(ii) in the case such biological product is a covered part D drug (as defined in section 1395w–102(e) of this title), the Medicare Prescription Drug Account under section 1395w–116 of this title in such Trust Fund.

**(5) Definitions of biosimilar biological product**

In this subsection, the term "biosimilar biological product" has the meaning given such term in section 1395w–3a(c)(6) of this title.

**42 U.S.C. § 1320f-2**

**§ 1320f-2. Manufacturer agreements**

**(a) In general**

For purposes of section 1320f(a)(2) of this title, the Secretary shall enter into agreements with manufacturers of selected drugs with respect to a price applicability period, by not later than February 28 following the selected drug publication date with respect to such selected drug, under which—

(1) during the negotiation period for the initial price applicability year for the selected drug, the Secretary and the manufacturer, in accordance with section 1320f–3 of this title, negotiate to determine (and, by not later than the last date of such period, agree to) a maximum fair price for such selected drug of the manufacturer in order for the manufacturer to provide access to such price—

(A) to maximum fair price eligible individuals who with respect to such drug are described in subparagraph (A) of section 1320f(c)(2) of this title and are dispensed such drug (and to pharmacies, mail order services, and other dispensers, with respect to such maximum fair price eligible individuals who are dispensed such drugs) during, subject to paragraph (2), the price applicability period; and

(B) to hospitals, physicians, and other providers of services and suppliers with respect to maximum fair price eligible individuals who with respect to such drug are described in subparagraph (B) of such section and are furnished or administered such drug during, subject to paragraph (2), the price applicability period;

(2) the Secretary and the manufacturer shall, in accordance with section 1320f–3 of this title, renegotiate (and, by not later than the last date of the period of renegotiation, agree to) the maximum fair price for such drug, in order for the manufacturer to provide access to such maximum fair price (as so renegotiated)—

(A) to maximum fair price eligible individuals who with respect to such drug are described in subparagraph (A) of section 1320f(c)(2) of this title and are dispensed such drug (and to pharmacies, mail order services, and other dispensers, with respect to such maximum fair price eligible individuals who are dispensed such drugs) during any year during the price applicability period (beginning after such renegotiation) with respect to such selected drug; and

(B) to hospitals, physicians, and other providers of services and suppliers with respect to maximum fair price eligible individuals who with respect to such drug are described in subparagraph (B) of such section and are furnished or administered such drug during any year described in subparagraph (A);

(3) subject to subsection (d), access to the maximum fair price (including as renegotiated pursuant to paragraph (2)), with respect to such a selected drug, shall be provided by the manufacturer to—

    (A) maximum fair price eligible individuals, who with respect to such drug are described in subparagraph (A) of section 1320f(c)(2) of this title, at the pharmacy, mail order service, or other dispenser at the point-of-sale of such drug (and shall be provided by the manufacturer to the pharmacy, mail order service, or other dispenser, with respect to such maximum fair price eligible individuals who are dispensed such drugs), as described in paragraph (1)(A) or (2)(A), as applicable; and

    (B) hospitals, physicians, and other providers of services and suppliers with respect to maximum fair price eligible individuals who with respect to such drug are described in subparagraph (B) of such section and are furnished or administered such drug, as described in paragraph (1)(B) or (2)(B), as applicable;

(4) the manufacturer submits to the Secretary, in a form and manner specified by the Secretary, for the negotiation period for the price applicability period (and, if applicable, before any period of renegotiation pursuant to section 1320f–3(f) of this title), and for section 1320f–1(f) of this title, with respect to such drug—

    (A) information on the non-Federal average manufacturer price (as defined in section 8126(h)(5) of title 38) for the drug for the applicable year or period;

    (B) information that the Secretary requires to carry out the negotiation (or renegotiation process) under this part; and

    (C) information that the Secretary requires to carry out section 1320f–1(f) of this title, including rebates under paragraph (4) of such section; and

(5) the manufacturer complies with requirements determined by the Secretary to be necessary for purposes of administering the program and monitoring compliance with the program.

## (b) Agreement in effect until drug is no longer a selected drug

An agreement entered into under this section shall be effective, with respect to a selected drug, until such drug is no longer considered a selected drug under section 1320f–1(c) of this title.

## (c) Confidentiality of information

Information submitted to the Secretary under this part by a manufacturer of a selected drug that is proprietary information of such manufacturer (as determined by the

Secretary) shall be used only by the Secretary or disclosed to and used by the Comptroller General of the United States for purposes of carrying out this part.

**(d) Nonduplication with 340B ceiling price**

Under an agreement entered into under this section, the manufacturer of a selected drug—

(1) shall not be required to provide access to the maximum fair price under subsection (a)(3), with respect to such selected drug and maximum fair price eligible individuals who are eligible to be furnished, administered, or dispensed such selected drug at a covered entity described in section 340B(a)(4) of the Public Health Service Act [42 U.S.C. 256b(a)(4)], to such covered entity if such selected drug is subject to an agreement described in section 340B(a)(1) of such Act [42 U.S.C. 256b(a)(1)] and the ceiling price (defined in section 340B(a)(1) of such Act [42 U.S.C. 256b(a)(1)]) is lower than the maximum fair price for such selected drug; and

(2) shall be required to provide access to the maximum fair price to such covered entity with respect to maximum fair price eligible individuals who are eligible to be furnished, administered, or dispensed such selected drug at such entity at such ceiling price in a nonduplicated amount to the ceiling price if such maximum fair price is below the ceiling price for such selected drug.

**42 U.S.C. § 1320f-3**

**§ 1320f-3. Negotiation and renegotiation process**

**(a) In general**

For purposes of this part, under an agreement under section 1320f–2 of this title between the Secretary and a manufacturer of a selected drug (or selected drugs), with respect to the period for which such agreement is in effect and in accordance with subsections (b), (c), and (d), the Secretary and the manufacturer—

(1) shall during the negotiation period with respect to such drug, in accordance with this section, negotiate a maximum fair price for such drug for the purpose described in section 1320f–2(a)(1) of this title; and

(2) renegotiate, in accordance with the process specified pursuant to subsection (f), such maximum fair price for such drug for the purpose described in section 1320f–2(a)(2) of this title if such drug is a renegotiation-eligible drug under such subsection.

**(b) Negotiation process requirements**

**(1) Methodology and process**

The Secretary shall develop and use a consistent methodology and process, in accordance with paragraph (2), for negotiations under subsection (a) that aims to achieve the lowest maximum fair price for each selected drug.

**(2) Specific elements of negotiation process**

As part of the negotiation process under this section, with respect to a selected drug and the negotiation period with respect to the initial price applicability year with respect to such drug, the following shall apply:

**(A) Submission of information**

Not later than March 1 of the year of the selected drug publication date, with respect to the selected drug, the manufacturer of the drug shall submit to the Secretary, in accordance with section 1320f–2(a)(4) of this title, the information described in such section.

**(B) Initial offer by Secretary**

Not later than the June 1 following the selected drug publication date, the Secretary shall provide the manufacturer of the selected drug with a written initial offer that contains the Secretary's proposal for the maximum fair price of the drug and a concise justification based on the factors described in subsection (e) that were used in developing such offer.

### (C) Response to initial offer

#### (i) In general

Not later than 30 days after the date of receipt of an initial offer under subparagraph (B), the manufacturer shall either accept such offer or propose a counteroffer to such offer.

#### (ii) Counteroffer requirements

If a manufacturer proposes a counteroffer, such counteroffer—

(I) shall be in writing; and

(II) shall be justified based on the factors described in subsection (e).

### (D) Response to counteroffer

After receiving a counteroffer under subparagraph (C), the Secretary shall respond in writing to such counteroffer.

### (E) Deadline

All negotiations between the Secretary and the manufacturer of the selected drug shall end prior to the first day of November following the selected drug publication date, with respect to the initial price applicability year.

### (F) Limitations on offer amount

In negotiating the maximum fair price of a selected drug, with respect to the initial price applicability year for the selected drug, and, as applicable, in renegotiating the maximum fair price for such drug, with respect to a subsequent year during the price applicability period for such drug, the Secretary shall not offer (or agree to a counteroffer for) a maximum fair price for the selected drug that—

(i) exceeds the ceiling determined under subsection (c) for the selected drug and year; or

(ii) as applicable, is less than the floor determined under subsection (d) for the selected drug and year.

## (c) Ceiling for maximum fair price

### (1) General ceiling

#### (A) In general

The maximum fair price negotiated under this section for a selected drug, with respect to the first initial price applicability year of the price applicability

period with respect to such drug, shall not exceed the lower of the amount under subparagraph (B) or the amount under subparagraph (C).

**(B) Subparagraph (B) amount**

An amount equal to the following:

### (i) Covered part D drug

In the case of a covered part D drug (as defined in section 1395w–102(e) of this title), the sum of the plan specific enrollment weighted amounts for each prescription drug plan or MA–PD plan (as determined under paragraph (2)).

### (ii) Part B drug or biological

In the case of a drug or biological product for which payment may be made under part B of subchapter XVIII, the payment amount under section 1395w–3a(b)(4) of this title for the drug or biological product for the year prior to the year of the selected drug publication date with respect to the initial price applicability year for the drug or biological product.

**(C) Subparagraph (C) amount**

An amount equal to the applicable percent described in paragraph (3), with respect to such drug, of the following:

### (i) Initial price applicability year 2026

In the case of a selected drug with respect to which such initial price applicability year is 2026, the average non-Federal average manufacturer price for such drug for 2021 (or, in the case that there is not an average non-Federal average manufacturer price available for such drug for 2021, for the first full year following the market entry for such drug), increased by the percentage increase in the consumer price index for all urban consumers (all items; United States city average) from September 2021 (or December of such first full year following the market entry), as applicable, to September of the year prior to the year of the selected drug publication date with respect to such initial price applicability year.

### (ii) Initial price applicability year 2027 and subsequent years

In the case of a selected drug with respect to which such initial price applicability year is 2027 or a subsequent year, the lower of—

(I) the average non-Federal average manufacturer price for such drug for 2021 (or, in the case that there is not an average non-Federal

average manufacturer price available for such drug for 2021, for the first full year following the market entry for such drug), increased by the percentage increase in the consumer price index for all urban consumers (all items; United States city average) from September 2021 (or December of such first full year following the market entry), as applicable, to September of the year prior to the year of the selected drug publication date with respect to such initial price applicability year; or

(II) the average non-Federal average manufacturer price for such drug for the year prior to the selected drug publication date with respect to such initial price applicability year.

## (2) Plan specific enrollment weighted amount

For purposes of paragraph (1)(B)(i), the plan specific enrollment weighted amount for a prescription drug plan or an MA–PD plan with respect to a covered Part D drug is an amount equal to the product of—

(A) the negotiated price of the drug under such plan under part D of subchapter XVIII, net of all price concessions received by such plan or pharmacy benefit managers on behalf of such plan, for the most recent year for which data is available; and

(B) a fraction—

(i) the numerator of which is the total number of individuals enrolled in such plan in such year; and

(ii) the denominator of which is the total number of individuals enrolled in a prescription drug plan or an MA–PD plan in such year.

## (3) Applicable percent described

For purposes of this subsection, the applicable percent described in this paragraph is the following:

### (A) Short-monopoly drugs and vaccines

With respect to a selected drug (other than an extended-monopoly drug and a long-monopoly drug), 75 percent.

### (B) Extended-monopoly drugs

With respect to an extended-monopoly drug, 65 percent.

### (C) Long-monopoly drugs

With respect to a long-monopoly drug, 40 percent.

**(4) Extended-monopoly drug defined**

**(A) In general**

In this part, subject to subparagraph (B), the term "extended-monopoly drug" means, with respect to an initial price applicability year, a selected drug for which at least 12 years, but fewer than 16 years, have elapsed since the date of approval of such drug under section 355(c) of title 21 or since the date of licensure of such drug under section 262(a) of this title, as applicable.

**(B) Exclusions**

The term "extended-monopoly drug" shall not include any of the following:

(i) A vaccine that is licensed under section 262 of this title and marketed pursuant to such section.

(ii) A selected drug for which a manufacturer had an agreement under this part with the Secretary with respect to an initial price applicability year that is before 2030.

**(C) Clarification**

Nothing in subparagraph (B)(ii) shall limit the transition of a selected drug described in paragraph (3)(A) to a long-monopoly drug if the selected drug meets the definition of a long-monopoly drug.

**(5) Long-monopoly drug defined**

**(A) In general**

In this part, subject to subparagraph (B), the term "long-monopoly drug" means, with respect to an initial price applicability year, a selected drug for which at least 16 years have elapsed since the date of approval of such drug under section 355(c) of title 21 or since the date of licensure of such drug under section 262(a) of this title, as applicable.

**(B) Exclusion**

The term "long-monopoly drug" shall not include a vaccine that is licensed under section 262 of this title and marketed pursuant to such section.

**(6) Average non-Federal average manufacturer price**

In this part, the term "average non-Federal average manufacturer price" means the average of the non-Federal average manufacturer price (as defined in section 8126(h)(5) of title 38) for the 4 calendar quarters of the year involved.

**(d) Temporary floor for small biotech drugs**

In the case of a selected drug that is a qualifying single source drug described in section 1320f–1(d)(2) of this title and with respect to which the first initial price applicability year of the price applicability period with respect to such drug is 2029 or 2030, the maximum fair price negotiated under this section for such drug for such initial price applicability year may not be less than 66 percent of the average non-Federal average manufacturer price for such drug (as defined in subsection (c)(6)) for 2021 (or, in the case that there is not an average non-Federal average manufacturer price available for such drug for 2021, for the first full year following the market entry for such drug), increased by the percentage increase in the consumer price index for all urban consumers (all items; United States city average) from September 2021 (or December of such first full year following the market entry), as applicable, to September of the year prior to the selected drug publication date with respect to the initial price applicability year.

**(e) Factors**

For purposes of negotiating the maximum fair price of a selected drug under this part with the manufacturer of the drug, the Secretary shall consider the following factors, as applicable to the drug, as the basis for determining the offers and counteroffers under subsection (b) for the drug:

**(1) Manufacturer-specific data**

The following data, with respect to such selected drug, as submitted by the manufacturer:

(A) Research and development costs of the manufacturer for the drug and the extent to which the manufacturer has recouped research and development costs.

(B) Current unit costs of production and distribution of the drug.

(C) Prior Federal financial support for novel therapeutic discovery and development with respect to the drug.

(D) Data on pending and approved patent applications, exclusivities recognized by the Food and Drug Administration, and applications and approvals under section 355(c) of title 21 or section 262(a) of this title for the drug.

(E) Market data and revenue and sales volume data for the drug in the United States.

**(2) Evidence about alternative treatments**

The following evidence, as available, with respect to such selected drug and therapeutic alternatives to such drug:

(A) The extent to which such drug represents a therapeutic advance as compared to existing therapeutic alternatives and the costs of such existing therapeutic alternatives.

(B) Prescribing information approved by the Food and Drug Administration for such drug and therapeutic alternatives to such drug.

(C) Comparative effectiveness of such drug and therapeutic alternatives to such drug, taking into consideration the effects of such drug and therapeutic alternatives to such drug on specific populations, such as individuals with disabilities, the elderly, the terminally ill, children, and other patient populations.

(D) The extent to which such drug and therapeutic alternatives to such drug address unmet medical needs for a condition for which treatment or diagnosis is not addressed adequately by available therapy.

In using evidence described in subparagraph (C), the Secretary shall not use evidence from comparative clinical effectiveness research in a manner that treats extending the life of an elderly, disabled, or terminally ill individual as of lower value than extending the life of an individual who is younger, nondisabled, or not terminally ill.

**(f) Renegotiation process**

**(1) In general**

In the case of a renegotiation-eligible drug (as defined in paragraph (2)) that is selected under paragraph (3), the Secretary shall provide for a process of renegotiation (for years (beginning with 2028) during the price applicability period, with respect to such drug) of the maximum fair price for such drug consistent with paragraph (4).

**(2) Renegotiation-eligible drug defined**

In this section, the term "renegotiation-eligible drug" means a selected drug that is any of the following:

**(A) Addition of new indication**

A selected drug for which a new indication is added to the drug.

**(B) Change of status to an extended-monopoly drug**

A selected drug that—

(i) is not an extended-monopoly or a long-monopoly drug; and

(ii) for which there is a change in status to that of an extended-monopoly drug.

**(C) Change of status to a long-monopoly drug**

A selected drug that—

(i) is not a long-monopoly drug; and

(ii) for which there is a change in status to that of a long-monopoly drug.

**(D) Material changes**

A selected drug for which the Secretary determines there has been a material change of any of the factors described in paragraph (1) or (2) of subsection (e).

**(3) Selection of drugs for renegotiation**

For each year (beginning with 2028), the Secretary shall select among renegotiation-eligible drugs for renegotiation as follows:

**(A) All extended-monopoly negotiation-eligible drugs**

The Secretary shall select all renegotiation-eligible drugs described in paragraph (2)(B).

**(B) All long-monopoly negotiation-eligible drugs**

The Secretary shall select all renegotiation-eligible drugs described in paragraph (2)(C).

**(C) Remaining drugs**

Among the remaining renegotiation-eligible drugs described in subparagraphs (A) and (D) of paragraph (2), the Secretary shall select renegotiation-eligible drugs for which the Secretary expects renegotiation is likely to result in a significant change in the maximum fair price otherwise negotiated.

**(4) Renegotiation process**

**(A) In general**

The Secretary shall specify the process for renegotiation of maximum fair prices with the manufacturer of a renegotiation-eligible drug selected for renegotiation under this subsection.

**(B) Consistent with negotiation process**

The process specified under subparagraph (A) shall, to the extent practicable, be consistent with the methodology and process established under subsection

(b) and in accordance with subsections (c), (d), and (e), and for purposes of applying subsections (c)(1)(A) and (d), the reference to the first initial price applicability year of the price applicability period with respect to such drug shall be treated as the first initial price applicability year of such period for which the maximum fair price established pursuant to such renegotiation applies, including for applying subsection (c)(3)(B) in the case of renegotiation-eligible drugs described in paragraph (3)(A) of this subsection and subsection (c)(3)(C) in the case of renegotiation-eligible drugs described in paragraph (3)(B) of this subsection.

**(5) Clarification**

A renegotiation-eligible drug for which the Secretary makes a determination described in section 1320f–1(c)(1) of this title before or during the period of renegotiation shall not be subject to the renegotiation process under this section.

## (g) Clarification

The maximum fair price for a selected drug described in subparagraph (A) or (B) of paragraph (1)[*] shall take effect no later than the first day of the first calendar quarter that begins after the date described in subparagraph[†] (A) or (B), as applicable.

---

[*] So in original. Probably means subparagraph (A) or (B) of paragraph (1) of section 1320f–1(e) of this title.

[†] So in original. Probably should be preceded by "such".

**42 U.S.C. § 1320f–4**

**§1320f–4. Publication of maximum fair prices**

**(a) In general**

With respect to an initial price applicability year and a selected drug with respect to such year—

> (1) not later than November 30 of the year that is 2 years prior to such initial price applicability year, the Secretary shall publish the maximum fair price for such drug negotiated with the manufacturer of such drug under this part; and

> (2) not later than March 1 of the year prior to such initial price applicability year, the Secretary shall publish, subject to section 1320f–2(c) of this title, the explanation for the maximum fair price with respect to the factors as applied under section 1320f–3(e) of this title for such drug described in paragraph (1).

**(b) Updates**

> **(1) Subsequent year maximum fair prices**

> For a selected drug, for each year subsequent to the first initial price applicability year of the price applicability period with respect to such drug, with respect to which an agreement for such drug is in effect under section 1320f–2 of this title, not later than November 30 of the year that is 2 years prior to such subsequent year, the Secretary shall publish the maximum fair price applicable to such drug and year, which shall be—

>> (A) subject to subparagraph (B), the amount equal to the maximum fair price published for such drug for the previous year, increased by the annual percentage increase in the consumer price index for all urban consumers (all items; United States city average) for the 12-month period ending with the July immediately preceding such November 30; or

>> (B) in the case the maximum fair price for such drug was renegotiated, for the first year for which such price as so renegotiated applies, such renegotiated maximum fair price.

> **(2) Prices negotiated after deadline**

> In the case of a selected drug with respect to an initial price applicability year for which the maximum fair price is determined under this part after the date of publication under this section, the Secretary shall publish such maximum fair price by not later than 30 days after the date such maximum price is so determined.

**42 U.S.C. § 1320f–5**

**§1320f–5. Administrative duties and compliance monitoring**

**(a) Administrative duties**

For purposes of section 1320f(a)(4) of this title, the administrative duties described in this section are the following:

(1) The establishment of procedures to ensure that the maximum fair price for a selected drug is applied before—

(A) any coverage or financial assistance under other health benefit plans or programs that provide coverage or financial assistance for the purchase or provision of prescription drug coverage on behalf of maximum fair price eligible individuals; and

(B) any other discounts.

(2) The establishment of procedures to compute and apply the maximum fair price across different strengths and dosage forms of a selected drug and not based on the specific formulation or package size or package type of such drug.

(3) The establishment of procedures to carry out the provisions of this part, as applicable, with respect to—

(A) maximum fair price eligible individuals who are enrolled in a prescription drug plan under part D of subchapter XVIII or an MA–PD plan under part C of such subchapter; and

(B) maximum fair price eligible individuals who are enrolled under part B of such subchapter, including who are enrolled in an MA plan under part C of such subchapter.

(4) The establishment of a negotiation process and renegotiation process in accordance with section 1320f–3 of this title.

(5) The establishment of a process for manufacturers to submit information described in section 1320f–3(b)(2)(A) of this title.

(6) The sharing with the Secretary of the Treasury of such information as is necessary to determine the tax imposed by section 5000D of the Internal Revenue Code of 1986, including the application of such tax to a manufacturer, producer, or importer or the determination of any date described in section 5000D(c)(1) of such Code. For purposes of the preceding sentence, such information shall include—

(A) the date on which the Secretary receives notification of any termination of an agreement under the Medicare coverage gap discount program under section 1395w–114a of this title and the date on which any subsequent agreement under such program is entered into;

(B) the date on which the Secretary receives notification of any termination of an agreement under the manufacturer discount program under section 1395w–114c of this title and the date on which any subsequent agreement under such program is entered into; and

(C) the date on which the Secretary receives notification of any termination of a rebate agreement described in section 1396r–8(b) of this title and the date on which any subsequent rebate agreement described in such section is entered into.

(7) The establishment of procedures for purposes of applying subsections (d)(2)(B) and (f)(1)(C) of section 1320f–1 of this title.

## (b) Compliance monitoring

The Secretary shall monitor compliance by a manufacturer with the terms of an agreement under section 1320f–2 of this title and establish a mechanism through which violations of such terms shall be reported.

**42 U.S.C. § 1320f–6**

**§1320f–6. Civil monetary penalties**

**(a) Violations relating to offering of maximum fair price**

Any manufacturer of a selected drug that has entered into an agreement under section 1320f–2 of this title, with respect to a year during the price applicability period with respect to such drug, that does not provide access to a price that is equal to or less than the maximum fair price for such drug for such year—

> (1) to a maximum fair price eligible individual who with respect to such drug is described in subparagraph (A) of section 1320f(c)(2) of this title and who is dispensed such drug during such year (and to pharmacies, mail order services, and other dispensers, with respect to such maximum fair price eligible individuals who are dispensed such drugs); or

> (2) to a hospital, physician, or other provider of services or supplier with respect to maximum fair price eligible individuals who with respect to such drug is described in subparagraph (B) of such section and is furnished or administered such drug by such hospital, physician, or provider or supplier during such year;

shall be subject to a civil monetary penalty equal to ten times the amount equal to the product of the number of units of such drug so furnished, dispensed, or administered during such year and the difference between the price for such drug made available for such year by such manufacturer with respect to such individual or hospital, physician, provider of services, or supplier and the maximum fair price for such drug for such year.

**(b) Violations relating to providing rebates**

Any manufacturer that fails to comply with the rebate requirements under section 1320f–1(f)(4) of this title shall be subject to a civil monetary penalty equal to 10 times the amount of the rebate the manufacturer failed to pay under such section.

**(c) Violations of certain terms of agreement**

Any manufacturer of a selected drug that has entered into an agreement under section 1320f–2 of this title, with respect to a year during the price applicability period with respect to such drug, that is in violation of a requirement imposed pursuant to section 1320f–2(a)(5) of this title, including the requirement to submit information pursuant to section 1320f–2(a)(4) of this title, shall be subject to a civil monetary penalty equal to $1,000,000 for each day of such violation.

**(d) False information**

Any manufacturer that knowingly provides false information pursuant to section 1320f–5(a)(7) of this title shall be subject to a civil monetary penalty equal to $100,000,000 for each item of such false information.

**(e) Application**

The provisions of section 1320a–7a of this title (other than subsections (a) and (b)) shall apply to a civil monetary penalty under this section in the same manner as such provisions apply to a penalty or proceeding under section 1320a–7a(a) of this title.

**42 U.S.C. § 1320f–7**

**§1320f–7. Limitation on administrative and judicial review**

There shall be no administrative or judicial review of any of the following:

(1) The determination of a unit, with respect to a drug or biological product, pursuant to section 1320f(c)(6) of this title.

(2) The selection of drugs under section 1320f–1(b) of this title, the determination of negotiation-eligible drugs under section 1320f–1(d) of this title, and* the determination of qualifying single source drugs under section 1320f–1(e) of this title the† application of section 1320f–1(f) of this title,.‡

(3) The determination of a maximum fair price under subsection (b) or (f) of section 1320f–3 of this title.

(4) The determination of renegotiation-eligible drugs under section 1320f–3(f)(2) of this title and the selection of renegotiation-eligible drugs under section 1320f–3(f)(3) of this title.

---

* So in original. The word "and" probably should not appear.
† So in original. Probably should be preceded by ", and".
‡ So in original.

**26 U.S.C. § 5000D**

**§ 5000D. Designated drugs during noncompliance periods**

**(a) In general**

There is hereby imposed on the sale by the manufacturer, producer, or importer of any designated drug during a day described in subsection (b) a tax in an amount such that the applicable percentage is equal to the ratio of—

(1) such tax, divided by

(2) the sum of such tax and the price for which so sold.

**(b) Noncompliance periods**

A day is described in this subsection with respect to a designated drug if it is a day during one of the following periods:

(1) The period beginning on the March 1st (or, in the case of initial price applicability year 2026, the October 2nd) immediately following the date on which such drug is included on the list published under section 1192(a) of the Social Security Act and ending on the earlier of—

(A) the first date on which the manufacturer of such designated drug has in place an agreement described in section 1193(a) of such Act with respect to such drug, or

(B) the date that the Secretary of Health and Human Services has made a determination described in section 1192(c)(1) of such Act with respect to such designated drug.

(2) The period beginning on the November 2nd immediately following the March 1st described in paragraph (1) (or, in the case of initial price applicability year 2026, the August 2nd immediately following the October 2nd described in such paragraph) and ending on the earlier of—

(A) the first date on which the manufacturer of such designated drug and the Secretary of Health and Human Services have agreed to a maximum fair price under an agreement described in section 1193(a) of the Social Security Act, or

(B) the date that the Secretary of Health and Human Services has made a determination described in section 1192(c)(1) of such Act with respect to such designated drug.

(3) In the case of any designated drug which is a selected drug (as defined in section 1192(c) of the Social Security Act) that the Secretary of Health and Human Services has selected for renegotiation under section 1194(f) of such Act,

the period beginning on the November 2nd of the year that begins 2 years prior to the first initial price applicability year of the price applicability period for which the maximum fair price established pursuant to such renegotiation applies and ending on the earlier of—

(A) the first date on which the manufacturer of such designated drug has agreed to a renegotiated maximum fair price under such agreement, or

(B) the date that the Secretary of Health and Human Services has made a determination described in section 1192(c)(1) of such Act with respect to such designated drug.

(4) With respect to information that is required to be submitted to the Secretary of Health and Human Services under an agreement described in section 1193(a) of the Social Security Act, the period beginning on the date on which such Secretary certifies that such information is overdue and ending on the date that such information is so submitted.

**(c) Suspension of tax**

**(1) In general**

A day shall not be taken into account as a day during a period described in subsection (b) if such day is also a day during the period—

(A) beginning on the first date on which—

(i) the notice of terminations of all applicable agreements of the manufacturer have been received by the Secretary of Health and Human Services, and

(ii) none of the drugs of the manufacturer of the designated drug are covered by an agreement under section 1860D–14A or 1860D–14C of the Social Security Act, and

(B) ending on the last day of February following the earlier of—

(i) the first day after the date described in subparagraph (A) on which the manufacturer enters into any subsequent applicable agreement, or

(ii) the first date any drug of the manufacturer of the designated drug is covered by an agreement under section 1860D–14A or 1860D–14C of the Social Security Act.

**(2) Applicable agreement**

For purposes of this subsection, the term "applicable agreement" means the following:

(A) An agreement under—

(i) the Medicare coverage gap discount program under section 1860D–14A of the Social Security Act, or

(ii) the manufacturer discount program under section 1860D–14C of such Act.

(B) A rebate agreement described in section 1927(b) of such Act.

## (d) Applicable percentage

For purposes of this section, the term "applicable percentage" means—

(1) in the case of sales of a designated drug during the first 90 days described in subsection (b) with respect to such drug, 65 percent,

(2) in the case of sales of such drug during the 91st day through the 180th day described in subsection (b) with respect to such drug, 75 percent,

(3) in the case of sales of such drug during the 181st day through the 270th day described in subsection (b) with respect to such drug, 85 percent, and

(4) in the case of sales of such drug during any subsequent day, 95 percent.

## (e) Definitions

For purposes of this section—

### (1) Designated drug

The term "designated drug" means any negotiation-eligible drug (as defined in section 1192(d) of the Social Security Act) included on the list published under section 1192(a) of such Act which is manufactured or produced in the United States or entered into the United States for consumption, use, or warehousing.

### (2) United States

The term "United States" has the meaning given such term by section 4612(a)(4).

### (3) Other terms

The terms "initial price applicability year", "price applicability period", and "maximum fair price" have the meaning given such terms in section 1191 of the Social Security Act.

## (f) Special rules

### (1) Coordination with rules for possessions of the United States

Rules similar to the rules of paragraphs (2) and (4) of section 4132(c) shall apply for purposes of this section.

**(2) Anti-abuse rule**

In the case of a sale which was timed for the purpose of avoiding the tax imposed by this section, the Secretary may treat such sale as occurring during a day described in subsection (b).

## (g) Exports

Rules similar to the rules of section 4662(e) (other than section 4662(e)(2)(A)(ii)(II)) shall apply for purposes of this chapter.

## (h) Regulations

The Secretary shall prescribe such regulations and other guidance as may be necessary to carry out this section.